### NATIONAL LABOR RELATIONS BOARD v. KELCO CORPORATION.

#### No. 5985.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 17, 1949.

Decided Dec. 20, 1949.

Sidney J. Barban, Attorney, National Labor Relations Board, Baltimore, Md. (David P. Findling, Associate General Counsel; A. Norman Somers, Assistant General Counsel; Frederick U. Reel and Robert E. Mullin, Attorneys, National Labor Relations Board, Washington, D. C., on brief) for petitioner.

John Henry Lewin, Baltimore, Md., (Edward L. Rich, Jr., and Venable, Baetjer & Howard, Baltimore, Md., on brief) for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board, entered September 21, 1948 and based on unfair labor practices which occurred in 1946. The order directed, among other things, the reinstatement with back pay to 23 employees who were found to have been discharged in violation of the provisions of the National Labor Relations Act, 29 U. S.C.A. § 151 et seq. Among those whose reinstatement was ordered were five persons who had been found by a Maryland Circuit Judge to have been guilty of acts of violence in connection with a strike and who had been enjoined by him from further acts of violence. The respondent admitted at the bar of the court that, except as to that portion of the order directing the reinstatement of these five men, the action of the Board was based on substantial evidence and should be obeyed, but it contends that, within a week after the entry of the order, it notified the Board that it would comply with all of the provisions of the order except those requiring the reinstatement of the five men and that, with this exception, the order has been fully complied with. Petition for enforcement of the order was not filed until September 30, 1949, more than a year after its entry, and there is no suggestion in the petition or elsewhere that the notice of respondent was not given in good faith or that, with the exception of the reinstatement of the five men, there has not been full compliance with the provisions of the order.

With respect to the reinstatement of the five men, it is alleged that, after their discharge and while they were picketing respondent's plant, they engaged in acts of violence of a serious character. Respondent offered evidence, which the trial examiner refused to receive, to the effect that they assaulted one of respondent's workers who was a non-striker and chased him home and that they knocked down in the street another non-striker and beat him after he was down. The offer of proof with respect to these matters by respondent's counsel

was as follows: "I proffer to show by these witnesses, and if necessary by others, that on or about November 1, 1946, Mr. Popiolek, Mr. MacMillan, Mr. Franckowski and Mr. Kolb assaulted and pursued Mr. Monacelli, one of the Kelco employees at that time, chased him to his home and carried the chase up to his very gate: I proffer to show by this witness and others that on or about November 5, 1946, Mr. Ruth, Mr. MacMillan, Mr. Franckowski and Mr. Kolb assaulted and beat and knocked down on the street and beat him after he was down, Mr. Hergenhahn, also at that time one of the employees of the Kelco Corporation."

The trial examiner refused to receive this evidence on the ground that there had been no conviction in a criminal case of the persons guilty of these acts of violence. Following this offer of proof, he admitted in evidence the injunction order against these five persons restraining them from further acts of violence and the findings of the state judge made in connection therewith, from which we quote the following:

"Now, of course, the striking employees of this plant have a right to put out a picket line, but I do not think a group or a combination of persons should leave the picket line and follow another employee and attempt to intimidate him by force to join their line. It is perfectly proper for them to use persuasion in a peaceful manner in trying to get him to join their cause. But here we have a situation where one man, Monacelli, went through the picket line and is followed. Of course, he walked fast and these men following him walked fast to keep up with him, and they came up with him at his back gate. I do not feel that is something that should be tolerated in this country. It is my belief that if a man desires to work down there and does not want to join the union, he has that right. I do not think he should be subjected to that kind of action on the part of a group of striking employees who have left the picket line. At the same time, I feel that the men on strike have an absolute right to picket the plant in a peaceful and lawful manner. By peaceful means they can try to persuade employees to quit and join their cause, and they can also attempt to persuade present and prospective employees from going into the plant of the Kelco Corporation. They should not have the right to use violence.

"There is no question in my mind but that Hergenhahn was assaulted by the men he testified he was assaulted by. I do not see how he could be mistaken about it. These are people with whom he has worked in the plant over a period of time, and I do not see how he could be mistaken as to the identity of the people who assaulted him."

 One member of the Board thought that the findings of the state judge should be accepted as conclusive evidence of misconduct sufficiently serious to deny reinstatement to the five employees. The majority, however, took the view that even if the Board were to accept respondent's offer of proof, the conduct of these five employees was not of so serious a character as to show them unfit for further employment by respondent. The citation of the case of Republic Steel Co., v. N. L. R. B., 3 Cir., 107 F.2d 472, as authority for this position, indicates that the majority was of opinion, as was the trial examiner, that acts of violence constituted no reason for denying reinstatement unless followed by conviction in a criminal case. This, we think, is an erroneous view of the law.[1] It is not the fact that employees have been convicted of crime that renders them ineligible for reinstatement, but the fact that they have been guilty of unlawful conduct which would make their presence undesirable because of the disruptive effect which it would have upon the employer's business. To order the reinstatement of employees who have been guilty of such serious acts

1. It should be noted that in the Republic Steel case reinstatement was ordered of employees who had been convicted of minor offenses and it is a reasonable inference that the offenses of those who had not been convicted of anything were of very minor character indeed. We do not regard this holding as authority for the position that serious acts of violence should not bar reinstatement unless followed by criminal conviction.

of violence, whether followed by criminal convictions or not, cannot reasonably be said to be proper action to "effectuate the policies of this act" within the meaning of sec. 10(c), 29 U.S.C.A. § 160(c). As said by Chief Justice Hughes, speaking for the Supreme Court in N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 257–258, 59 S.Ct. 490, 497, 83 L.Ed. 627, 123 A.L.R. 599: "There is not a line in the statute to warrant the conclusion that it is any part of the policies of the Act to encourage employees to resort to force and violence in defiance of the law of the land. On the contrary, the purpose of the Act is to promote peaceful settlements of disputes by providing legal remedies for the invasion of the employees' rights. Elections may be ordered to decide what representatives are desired by the majority of employees in appropriate units as determined by the Board. To secure the prevention of unfair labor practices by employers, complaints may be filed and heard and orders made. The affirmative action that is authorized is to make these remedies effective in the redress of the employees' rights, to assure them self-organization and freedom in representation, not to license them to commit tortious acts or to protect them from the appropriate consequences of unlawful conduct. We are of the opinion that to provide for the reinstatement or reemployment of employees guilty of the acts which the Board finds to have been committed in this instance would not only not effectuate any policy of the Act but would directly tend to make abortive its plan for peaceable procedure."

In Southern Steamship Company v. N. L. R. B., 316 U.S. 31, 62 S.Ct. 886, 894, 86 L.Ed. 1246, there was no showing that any of the seamen who had engaged in unlawful conduct had been convicted of crime; but the Supreme Court nevertheless reversed an order directing their reinstatement, saying: "Section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c) permits the Board to require an employer who has committed an unfair labor practice to take 'such affirmative action, including reinstatement of employees * * *, as will effectuate the policies of the Act.' This authorization is of considerable breadth, and the courts may not lightly disturb the Board's choice of remedies. But it is also true that this discretion has its limits, and we have already begun to define them. National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; Republic Steel Corp. v. Labor Board, 311 U. S. 7, 61 S.Ct. 77, 85 L.Ed. 6. A complete definition of course was not and could not have been attempted in those cases. Nor will it be attempted here. It is sufficient for this case to observe that the Board has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives."

The rule seems well settled that serious acts of violence on the part of striking employees should bar them of reinstatement, whether they have been prosecuted therefor or not. In Standard Lime & Stone Co. v. N. L. R. B., 97 F.2d 531, 535-536, this court, speaking through Judge Soper, said: "The right of an employer to discharge or to refuse to reinstate a man who has committed a crime which endangers the safety of his fellow workers or the integrity of the plant cannot be successfully challenged. The statute does not purport to destroy this right, or contemplate that an employer must continue to employ or to treat as employees men who have engaged in unlawful conduct of this character. Nor would such an interpretation effectuate the policies of an act designed to remove the sources of industrial strife by encouraging the friendly adjustment of industrial disputes."

In N. L. R. B. v. Clinchfield Coal Corp., 4 Cir., 145 F.2d 66, 155 A.L.R. 874, where striking employees had been guilty of unlawful interference with company property, we held this a sufficient reason for denying enforcement of an order directing the reinstatement of these employees, although there was no contention that they had been convicted of crime. See also N. L. R. B. v. Ohio Calcium Co., 6 Cir., 133 F.2d 721; N. L. R. B. v. Mt. Clemens Pottery Co., 6 Cir., 147 F.2d 262; Wilson & Co. v. N. L. R. B., 7 Cir., 120 F.2d 913; N. L. R. B. v. Illinois Tool Works, 7 Cir., 153 F.2d 811, 815. In

the case last cited Judge Kerner, speaking for the Seventh Circuit, drew a distinction which we regard as valid in the following language: "Courts have recognized that a distinction is to be drawn between cases where employees engaged in concerted activities exceed the bounds of lawful conduct in 'a moment of animal exuberance' (Milk Wagon Drivers Union ·v. Meadowmoor Dairies, Inc., 312 U.S. 287, 293, 61 S.Ct. 552, 555, 85 L.Ed. 836, 132 A.L.R. 1200) or in a manner not activated by improper motives, and those flagrant cases in which the misconduct is so violent or of such serious character as to render the employee unfit for further service, Cf. National Labor Relations Board v. Fansteel Metallurgical Corp. supra, and Southern Steamship Co. v. National Labor Relations Board, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246, and that it is only in the latter type of cases that the courts find that the protection of the right of employees to full freedom in self-organizational activities should be subordinated to the vindication of the interests of society as a whole."

■ The case here, if the facts which respondent proposed to prove be accepted, was not one where the employees had exceeded the bounds of lawful conduct "in a moment of animal exuberance" or where they were not activated by improper motives, but one where, if the proffer of proof is believed, they were engaging in brutal violence and intimidation of serious character, ganging up on a non-striking employee and chasing him to his home in one case, knocking down an employee and beating him publicly in the other. The Maryland judge before whom the matter was brought did not think it trivial but on the basis thereof granted an injunction against these employees forbidding further acts of violence on their part.

We do not attempt to make findings of fact or to decide on the present state of the record whether the five men should or should not be reinstated. It is for the Board after hearing the evidence to find the facts and make the decision in accordance with the rules of law that the courts have laid down. What we hold is that acts of violence may not be ignored because they have not resulted in criminal convictions, and that the evidence as to the acts of violence by the five employees was rejected upon an erroneous view of the law. We cannot hold the rejection to be harmless error on the theory that if admitted it would not have affected the result, since we cannot assume that serious acts of violence, such as respondent offered to prove, would not be held by the Board to be sufficient ground for refusing reinstatement once the necessity of criminal convictions is out of the way. The case will be remanded to the Board, therefore, to hear evidence and make further findings with respect to these five men and to make such changes in its order as it may think proper.

■ It is suggested that, even though we remand the case with respect to that portion of the order relating to the five employees, we should enter an order enforcing its other provisions. We see no reason, however, for any undue haste in entering such a partial enforcement decree. There is no suggestion that the respondent is not complying faithfully with the other provisions of the order; and the Board was quite content to wait for more than a year to ask for enforcement. It seems more than probable that enforcement would never been asked at all had respondent accepted the entire order as it did all except that part of it relating to the reinstatement of the five employees. We think that, under such circumstances, the court will be acting well within the limits of its discretion in withholding the use of its injunctive power until the Board's order has been put in final form. See Hecht Co. v. Bowles, 321 U.S. 321, 327-331, 64 S.Ct. 587, 88 L.Ed. 754, N. L. R. B. v. Norfolk Shipbuilding & Drydock Co., 4 Cir., 172 F.2d 813, 815. After the additional evidence has been taken as herein directed and the Board has made such amendments in its order as seem proper, it may then apply for a decree enforcing the entire order, if it then deems such course advisable. In the meantime, it may make application for partial enforcement, if it should have reason to believe that respondent is not complying in good faith with the provisions other than that relating to the reinstatement of the five employees.

Case remanded.