## NATIONAL LABOR RELATIONS BOARD v. LONGVIEW FURNITURE CO.

### No. 6593.

United States Court of Appeals, Fourth Circuit.

Argued June 12, 1953.

Decided July 27, 1953.

---

(George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Whiteford S. Blakeney, Charlotte, N. C., and Young M. Smith, Hickory, N. C., (Pierce & Blakeney, Charlotte, N. C., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board which found the Longview Furniture Company of Hickory, N. C. guilty of certain unfair labor practices in violation of sections 8(a) (1) and (3) of the National Labor Relations Act as amended and directed it to cease and desist from such practices and to reinstate with back pay certain employees found to have been discriminatorily discharged. The facts are set forth in the decision and order of the Board and the intermediate report of the trial examiner and need not be repeated here. The company does not contest the validity of the order except in so far as it requires the reinstatement with back pay of certain employees who used vulgar, profane and intimidating language towards other employees in an effort to intimidate them and prevent their working for the company while a strike was in progress and certain other employees who participated in an assault on a woman employee as she was returning to work.

We agree with the Board that reinstatement is not to be denied striking employees because of ordinary incidents of the maintenance of a picket line or for the use of rude language arising out of the feelings thereby aroused. We do not think, however, that anything in the act requires or contemplates the reinstatement of employees who have banded together in hurling profane, obscene and insulting epithets at employees who are attempting to work, in an effort to degrade and humiliate them publicly and prevent their working. To get into a quarrel in the course of an argument on the picket line and use unseemly

Lewis C. Green, Atty., National Labor Relations Board, Washington, D. C.

language is not ordinarily a matter which would justify discharge or the denial of reinstatement;[1] but to combine with others to use profane and indecent language in an attempt to humiliate those who are attempting to work and thus to prevent their working is a very different thing and falls, we think, within the principle laid down by this court in N. L. R. B. v. Kelco Corporation, 4 Cir., 178 F.2d 578 and by the Supreme Court in N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 and Southern Steamship Co. v. N. L. R. B., 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246. The employment of persons who have been guilty of such conduct toward their fellow employees has a disruptive effect on the employer's business as the result of the feelings and antagonisms thereby engendered. As we said in N. L. R. B. v. Kelco, supra [178 F.2d 580], "It is not the fact that employees have been convicted of crime that renders them ineligible for reinstatement, but the fact that they have been guilty of unlawful conduct which would make their presence undesirable because of the disruptive effect which it would have upon the employer's business. To order the reinstatement of employees who have been guilty of such serious acts of violence, whether followed by criminal convictions or not, cannot reasonably be said to be proper action to 'effectuate the policies of this act' within the meaning of sec. 10(c), 29 U.S.C.A. § 160(c)." From the standpoint of discharge or reinstatement there is no difference in principle between engaging in acts of violence and using profane and insulting language towards fellow employees in an effort to drive them from work.

██ ██ Striking employees have the right to establish a picket line, to use arguments in support of their position and to attempt by proper means to induce other persons not to work at the jobs that they have vacated by striking. It has been held, however, that the act does not protect them in engaging in a sit down strike and thus preventing the employer from making a

proper use of his property, N. L. R. B. v. Fansteel Metallurgical Corp., supra, in unlawfully interfering with the employer's property, N. L. R. B. v. Clinchfield Coal Corp., 4 Cir., 145 F.2d 66, 155 A.L.R. 874, in obstructing a plant manager's entrance to the Plant, N. L. R. B. v. Perfect Circle Co., 7 Cir., 162 F.2d 566, or in engaging in acts of violence against those who are attempting to work. N. L. R. B. v. Kelco Corp., supra. We think it equally clear that the act does not protect them in using insulting and profane language calculated and intended to publicly humiliate and degrade employees who are attempting to work in an effort to prevent them from working. They are no more privileged to infringe upon the rights of fellow employees than upon the rights of the employer.

██ ██ There is evidence that after the strike was over employees who had been humiliated and insulted refused to work with those who had thus insulted them and that one of the striking employees who had been taken back was discharged for this reason. We agree with the Board that a wrongful discharge may not be justified because demanded by other employees. Cf. Wallace Corporation v. N. L. R. B., 4 Cir., 141 F.2d 87, 91, affirmed 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216. Where, however, the employees discharged have been guilty of the improper conduct of which some of the employees here concerned had been guilty, discharge on that account was proper and no provision of the act required their reinstatement. What was said by Chief Justice Hughes in the Fansteel case, supra, with reference to the reinstatement of employees who had been guilty of conduct rendering them unfit for reinstatement is applicable here. Said he:

"There is not a line in the statute to warrant the conclusion that it is any part of the policies of the Act to encourage employees to resort to force and violence in defiance of the law of the land. On the contrary, the purpose of the Act is to promote peaceful settle-

1. N. L. R. B. v. Stackpole Carbon Co., 3 Cir., 105 F.2d 167, 176; N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, 887; N. L. R. B. v. Deena Artware, Inc., 6 Cir., 198 F.2d 645, 652.

ments of disputes by providing legal remedies for the invasion of the employees' rights. Elections may be ordered to decide what representatives are desired by the majority of employees in appropriate units as determined by the Board. To secure the prevention of unfair labor practices by employers, complaints may be filed and heard and orders made. The affirmative action that is authorized is to make these remedies effective in the redress of the employees' rights, to assure them self-organization and freedom in representation, not to license them to commit tortious acts or to protect them from the appropriate consequences of unlawful conduct. We are of the opinion that to provide for the reinstatement or re-employment of employees guilty of the acts which the Board finds to have been committed in this instance would not only not effectuate any policy of the Act but would directly tend to make abortive its plan for peaceable procedure." [306 U.S. 240, 59 S.Ct. 497]

With respect to the assault on the woman employee as she was returning to work, the Board denied reinstatement to the woman who seized her and was convicted and fined for the assault, but not to the four others who were cooperating with her and were equally guilty. We think that all should have been denied reinstatement. Threats had been made against the women workers that, if they returned to work, their clothes would be torn from them by other women who would be brought to the picket lines for that purpose. When Mrs. Illa Cannup came to work next morning, five women ran towards her, one of them yelling "come on girls let's get her". One of them seized her and pulled her "down the steps". While only this one was convicted and fined for the assault, it is clear that the participation of the others made them particeps criminis and forfeited any right they may have had to reinstatement as employees. W. T. Rawleigh Co. v. N. L. R. B., 7 Cir., 190 F.2d 832, 839; N. L. R. B. v. Fansteel Corporation, 306 U.S. 240, 260, 59 S.Ct. 490, 83 L.Ed. 627.

For the reasons stated, Martha Leatherman, Ollie Craig, Katie Miller and Nancy Harrelson will be eliminated from the reinstatement list because of the part taken by them in the assault on Illa Cannup. As to Charles Ball, Christine Beane, Harold Clampitt, Eugene Collins, Leroy Giles, James Martin, Frank Miller, Ben Roberts and Floyd Shook, who are charged with the use of profane and insulting language to employees for the purpose of driving them from work, the case is remanded to the Board with direction that it determine which of them should be denied reinstatement under the principles herein set forth. With modifications as herein indicated, the order of the Board will be enforced.

Modified and enforced.