**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MASTRO PLASTICS CORPORATION and French-American Reeds Manufacturing Company, Inc., Respondents.**

**Docket 22905.**

United States Court of Appeals Second Circuit.

Motion Argued Nov. 10, 1958.

Decided Nov. 21, 1958.

Eugene Adams Keeney, Washington, D. C. (Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, Louis Schwartz, Assistant General Counsel, Irving M. Herman, National Labor Relations Board,

Washington, D. C., on the brief), for petitioner.

Bernard H. Fitzpatrick, New York City (Butler, Fitzpatrick, DeSio & Keating, New York City, on the brief), for respondents.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

■ We grant the petition of the National Labor Relations Board to hold Mastro Plastics Corporation and French-American Reeds Manufacturing Co., Inc. in civil contempt for failure to reinstate Yolanda Flamio as directed by our order of August 19, 1954, issued following our decision in 2 Cir., 214 F.2d 462, affirmed 1956, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309.

■ Respondents' refusal to reinstate Yolanda Flamio, in which they have steadfastly persisted since the affirmance of our order by the Supreme Court on February 27, 1956, constitutes a contempt of this court. If respondents believed that they had sufficient grounds to justify not reinstating Yolanda Flamio, their only proper recourse was in timely fashion to petition this court for modification of its clear mandate. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599; National Labor Relations Board v. Republican Publishing Co., 1 Cir., 1950, 180 F.2d 437, 440. The orderly administration of justice requires that respondents scrupulously avoid a unilateral determination that our orders need no longer be complied with. See United States v. United Mine Workers of America, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

Respondents have never sought such a modification. The first time that they manifested an awareness that such a modification was required to justify

their action was in July 1958 when they petitioned the Labor Board for relief. Plainly the Board has no jurisdiction to modify a decree of this court, and the Board so held. Furthermore, even had that petition been made to us, it was so late as to be untimely and the reasons advanced in support of it, and repeated here, are manifestly insufficient. We therefore hold that as to their past failure to comply with our decree respondents are in contempt of this court. Similarly, even if the justifications erroneously urged in support of past conduct are now viewed as a petition for modification, no sufficient basis for such amendment has been presented.

■ The first reason urged by respondent for refusing to reinstate Yolanda Flamio is that on January 25, 1951 she was convicted of disorderly conduct and received a suspended sentence in the New York City Magistrate's Court for actions connected with the 1950–1951 strike at the Mastro plant which strike was part of the underlying labor dispute in this unduly prolonged case. Respondents are now foreclosed from raising any question regarding Yolanda Flamio's conviction since they failed to assert such a ground in the proceedings before this court in 1954 which resulted in our order.

In March of 1952 hearings were held before a trial examiner on a complaint charging Mastro with unfair labor practices in discharging 77 employees including Yolanda Flamio. Although the discharge and reinstatement of these employees were the central issues in dispute, Mastro never asserted the improper conduct of Yolanda Flamio or her disorderly conduct conviction as a ground for not reinstating her. No valid reason has been offered by respondents to excuse their failure to raise the conviction issue before the trial examiner.[1] Their failure to assert the conviction be-

---

1. Nowhere have respondents seriously questioned that they knew of the conviction at the time of the hearings. Instead Mastro submits an affidavit of Morris

Hecht, its Personnel and Production Manager, who says that he did not know of Yolanda Flamio's conviction until sometime after his interview with her in

fore the Board would itself have precluded them from asserting it here in 1954, 29 U.S.C.A. § 160(e) and necessarily prevents such assertion now.

Respondents also defend their refusal to reinstate on the ground that Yolanda Flamio, in answering the questions on respondents' application for reinstatement, failed to state that she had been arrested for the same disorderly conduct. On this record we think that this argument is merely a specious excuse to avoid a plain duty. Almost immediately after the Supreme Court decision on February 27, 1956 Mastro wrote to all employees covered by the order, including Yolanda Flamio, and offered reinstatement. On March 14 Yolanda Flamio applied and was interviewed by Morris Hecht, Mastro's Personnel and Production Manager. Hecht used an employment application form and wrote in Yolanda Flamio's answers, which she then read over and signed. Yolanda Flamio's answers to whether she had ever been arrested or summoned to court were in the negative. She said she would accept her job if rehired and, although she was told that the company would let her know, she heard nothing further.

On December 5, 1956, Mastro's counsel reported by letter to the Board's regional office regarding its disposition of applications for reinstatement and it reported regarding Yolanda Flamio that her application was declined, adding in reference to her case, "Convicted of disorderly conduct in connection with strike." No claim was made that the application was declined because Yolanda Flamio had failed to disclose her conviction until July 1958 when respondents finally petitioned the Board for relief from our order. So delayed, the claim is plainly specious, since it appears that respondents at all times knew of all of Yolanda Flamio's actions.

March 1956. But as Hecht was not employed by Mastro until October 1951, nine months after the conviction, this is no proof that the company did not know.

■■ Furthermore, even had the apparent misstatement been urged in a more timely and convincing manner, it would have been insufficient to justify a modification of our order. Modification should not be considered unless it is based upon subsequent events or subsequently discovered evidence which would tend to show that reinstatement would no longer further the purpose of the Act. Cf. National Labor Relations Board v. Fansteel Metallurgical Corp., 1939, 306 U.S. 240, 257–258, 59 S.Ct. 490, 83 L.Ed. 627; National Labor Relations Board v. Longview Furniture Co., 4 Cir., 1953, 206 F.2d 274; National Labor Relations Board v. Kelco Corporation, 4 Cir., 1949, 178 F.2d 578; Republic Steel Corporation v. N. L. R. B., 3 Cir., 1939, 107 F. 2d 472, 479, certiorari denied 1940, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1027. Yolanda Flamio's alleged misstatement is not such an event since: (1) the company was already barred from urging her conduct in connection with the strike as a reason for being relieved from any duty to reinstate; (2) respondents' knowledge of her activities bars them from claiming that they were deceived or misled by her statement; and (3) their personnel manager admitted that, within his knowledge, similar misstatements had not been considered by respondents to be an adequate basis for discharge of employees.

We therefore conclude that respondents have shown nothing which can now excuse them from complying with our prior order.

Accordingly the respondents are held in contempt. They may purge themselves by:

(1) Within five days reinstating Yolanda Flamio as required by our original decree. In order to insure speedy compliance with our order [2] a fine of $100.00 per day is hereby imposed for every day thereafter that such reinstatement is not effected.

2. See United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

(2) Paying to Yolanda Flamio her back salary to the date of reinstatement as computed by the Board.

(3) Paying to the Board its costs involved in these contempt proceedings.[3]

---

3. West Texas Utilities Co. v. N. L. R. B., 92 U.S.App.D.C. 224, 206 F.2d 442, 448, certiorari denied 1953, 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369; National Labor Relations Board v. Nesen, 9 Cir., 1954, 211 F.2d 559, 564, certiorari denied 1954, 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 646.