NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FAIRVIEW HOSPITAL, Respondent.

No. 18151.

United States Court of Appeals,
Seventh Circuit.

April 28, 1971.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul Elkin, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Abigail Cooley Baskir, Melvyn I. Monzack, Attys., N.L.R.B., for petitioner.

Mervin N. Bachman, Chicago, Ill., David L. Passman, Arvey, Hodes & Mantynband, Chicago, Ill., for respondent.

Before KNOCH, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

PELL, Circuit Judge.

On December 3, 1970, in accordance with its opinion-order of October 20, 1970, this court entered its decree enforcing an order of the National Labor Relations Board issued on March 20, 1969 which, *inter alia,* directed that Fairview Hospital, Inc. and its personnel

should offer a former employee, an orderly, reinstatement with reimbursement of any lost earnings. Despite various attempts by the Board to secure compliance without further resort to this court, the hospital and its executive directress, Geraldine Freund, have continuously refused to comply with the Board's order enforced by this court. The decision of this court ordering enforcement stands unchallenged by a petition for rehearing, by a petition for a writ of certiorari, or by any other recognized proceedings for the purpose of challenging the correctness of a decision of this court.

Accordingly, on April 9, 1971, Fairview Hospital, Inc. and Geraldine Freund were found in contempt of this court and its decree of December 3, 1970, and they were each fined $500 for each day they failed to purge themselves of said contempt.

The hospital and its directress admit noncompliance but state that the discharged employee "had been breaking into the medicine room and stealing drugs and that he had sexual relations with hospital personnel on hospital premises." It is further claimed that Fairview Hospital is a psychiatric hospital, that many of the younger patients have drug-associated problems and that the retention of the employee constitutes a hazard to the operation of the hospital and is inimical to the welfare, mental health and treatment of the patients. It is further claimed that he was discharged at the earliest opportunity.

This court would not lightly impose upon a psychiatric hospital the necessity of hiring an employee who would be a threat to the proper treatment of mental patients. Because of this and because of the stubborn insistence of the hospital and its directress that there will be no rehiring, we have again reviewed the entire record in this cause in connection with an emergency motion of the hospital and its directress praying for an order staying the contempt order of this court for a period of thirty days and to remit and suspend all fines which may

have been incurred heretofore so that during said period a petition for certiorari may be filed with the United States Supreme Court. Presumably, the petition for certiorari could request only a review of the contempt order of this court as there has been no timely request for a review of the opinion and decree of this court ordering reinstatement.

This is not a situation in which we are urged to modify our order because subsequent events or subsequently discovered evidence would tend to show that reinstatement would no longer further the purpose of the Act. *See* N. L. R. B. v. Mastro Plastics Corp., 261 F.2d 147, 149 (2d Cir. 1958). The situation indeed is far removed from *Mastro*.

In the hearing before the trial examiner, Freund was called as an adverse witness by the General Counsel. When asked why the employee in question was fired, she did state on two counts that she would care "to discuss here now." The following then appears in testimony:

"Q. (By Mr. Maslanka) Why was [the employee] fired?

A. That is because he was doing it.

Q. Doing what?

A. He was discussing the union during working hours.

\* \* \* \* \* \*

Q. What did you say to him?

A. I just told him he had repeatedly been told not to discuss union activities while he was taking care of patients, and he had been cautioned long before, and if they are doing it, this would be cause for dismissal."

It was not until Freund testified on behalf of the hospital, nearly 300 pages of transcript later, that she first adverted to the charges of misconduct against the employee. At that time she said that they had been getting complaints "about some charges, about drugs." She further said that he had broken into a medicine room and had taken drugs: "I

didn't see him do it, but it was told to me." This alleged occurrence, according to Freund's own testimony, was several months before he was discharged.

She then referred to his alleged relationship with the nurses when he was off duty late in the evening. This again was a charge which came to her and when asked when it had occurred, she replied: "Two, three months before. It was going on for several months."

The trial examiner, while finding no violations of the Act in the discharge of three other employees nor in a resignation by a fourth employee, and while dismissing many other allegations of the complaint, did find that the discharge here involved violated §§ 8(a) (1) and 8(a) (2) of the Act. The trial examiner pointed out that while the employee according to Freund was suspected of having engaged in serious derelictions over a period of several months, nevertheless no disciplinary action had been taken against him. The trial examiner laid substantial significance on the fact that although serious accusations had been made against the employee, Freund was willing to act slowly, cautiously and only with a certainty so that if the employee were innocent he would not be unfairly penalized. In contrast, on a Sunday afternoon when the hospital was operating on a skeleton staff, the employee was peremptorily discharged for an alleged brief conversation with another employee about the latter's voting intentions the next day. The trial examiner found credibility in the employee's version of the events leading to the discharge and a lack of credibility on the part of the directress.

In the opinion-order of this court, the credibility determination was a reasonable one "under the circumstances of this case, which indicated other evidence of a background of anti-union activity on the part of" Geraldine Freund. N. L. R. B. v. American Casting Service, Inc., 365 F.2d 168, 174 (7th Cir. 1966); Saginaw Furniture Shops, Inc. v. N. L. R. B., 343 F.2d 515, 516–17 (7th Cir. 1965).

At the juncture at which we now find ourselves, we find incredible the presently expressed concern of the executive directress over the re-employment of the discharged orderly, when with knowledge of the claimed derelictions on his part she permitted him to remain an employee for several months and until what she interpreted to be a display of union activity on his part.

■ In view of the clear support for the findings of the trial examiner, which were affirmed by the order of the Board and by the order of this court, that the immediate reason for the discharge of the employee was attributable to his union activities, the present position taken by the hospital and its executive directress would not prevail even though the claimed derelictions had been discovered shortly prior to the alleged discharge.

As this Court has long recognized, the existence of valid grounds for punitive action is no defense unless such action was predicated solely on these grounds and not by a desire to discourage protected activity. N. L. R. B. v. Symons Manufacturing Co., 328 F.2d 835, 837 (7th Cir. 1964); N. L. R. B. v. Howe Scale Co., 311 F.2d 502, 505 (7th Cir. 1963); N. L. R. B. v. Deena Products Co., 195 F.2d 330, 334–335 (7th Cir. 1952), cert. denied, 344 U.S. 827, 73 S. Ct. 29, 97 L.Ed. 644 (1952).

Here the continuance of employment after the discovery of the claimed malfeasance was of such duration as to provide inescapable indicia of afterthought.

■ Even if there were grounds, which we cannot now conceive, for not complying with the judgment directing the reinstatement, respondent's proper recourse would have been, as the court said in *Mastro, supra*, 261 F.2d at 148,

"in timely fashion to petition this court for a modification of its clear mandate. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S. Ct. 497, 93 L.Ed. 599; National Labor Relations Board v. Republican Publishing Co., 1 Cir., 1950, 180 F.2d 437, 440. The orderly administration of

justice requires that respondents scrupulously avoid a unilateral determination that [the court's] orders need no longer be complied with."

Moreover, such grounds would have to be "based upon *subsequent events or subsequently discovered evidence* which would tend to show that reinstatement would no longer further the purpose of the Act." N. L. R. B. v. Mastro Plastics Corp., *supra*, 261 F.2d at 149, and cases cited therein. (Emphasis added.) Respondents have not petitioned for modification. Nor did they seek review "by a petition for a rehearing, by a petition for a writ of certiorari, or conceivably by a petition for a writ of prohibition." N. L. R. B. v. Local 282, I. B. T., 428 F. 2d 994, 999 (2d Cir. 1970). They merely raise the same defense before this court for a second time.

■ Finally, the hospital and its directress claim that there should be no contempt holding because she is acting in good faith "solely to protect the best interests of the patients in the hospital." This claim is also without merit. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191–192, 69 S.Ct. 497, 93 L.Ed. 599 (1949); Evans v. I. T. U., 81 F.Supp. 675, 688 (S.D.Ind.1948). As the Supreme Court stated in *Jacksonville Paper Co.*, 336 U.S. at 191, 69 S.Ct. at 499:

"Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of non-compliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions. And the grant or withholding of a remedial relief is not wholly discretionary with the judge. * * * The private or public rights that the decree sought to protect are an important measure of the remedy." (Citations and footnote omitted.)

*Accord,* United States v. United Mine Workers, 330 U.S. 258, 303, 304, 67 S.Ct. 677, 91 L.Ed. 884.

■ The hospital and its executive directress have been aware for more than six months that an order of the National Labor Relations Board entered in March of 1969 was to be enforced, which included reinstatement of the employee in question. Further delay would indeed make a mockery of lawful procedures established for the protection of labor. Expectation of and necessity for obedience to the law is not to be confined to marchers on the mall or confrontations on the campus. Respect for and observance of the law must pervade all strata of society.

The motion of Fairview Hospital, Inc. and Geraldine Freund for an order staying the effect of the contempt order issued by this court and requesting that this court remit and suspend fines and penalties which may have accrued heretofore is denied.