**KAYSER–ROTH HOSIERY COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Textile Workers Union of America, AFL–CIO, Intervenor.**

No. 71–1010.

United States Court of Appeals, Sixth Circuit.

Aug. 31, 1971.

---

23. Appellants' Opening Brief, at p. 11.

24. *See also* In re Dennis Mitchell Industries, Inc., 419 F.2d 349 (3rd Cir. 1969).

J. W. Alexander, Jr., Charlotte, N. C. (Brown, Hill, Boswell, Charlotte, N. C., on the brief), for petitioner. Blakeney, Alexander & Machen, Charlotte, N. C., of counsel.

Arthur L. Fox, II, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Attys., N. L. R. B., Washington, D. C., on the brief), for respondent.

Patricia E. Eames, Alan S. Gordon, New York City, on the brief for intervenor.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Petitioner Kayser-Roth Hosiery Company, Inc. (hereinafter "Company") has filed this action pursuant to Section 10(f) of the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., for review of an order of the National Labor Relations Board (hereinafter "Board") ruling that the Company violated Sections 8(a) (1), (a) (3) and (a) (5) of the Act. The Board has filed a cross-application with this Court for enforcement of the order and the charging party in the Board proceedings, the Textile Workers Union of America (hereinafter "Union") has filed a brief as intervenor.

We are principally concerned with three findings of the Board against the Company. (1) That the Company wrongfully refused to reinstate 6 striking employees; (2) that it delayed the reinstatement of many of the strikers while employees hired during the strike were retained; and (3) that the Company refused to furnish the Union with a departmental seniority list after the strike in violation of the Act.

We must note at the outset that the Company has a history of resistence to collective bargaining and that we have already ruled in Kayser-Roth Hosiery Co. v. N.L.R.B., 430 F.2d 701 (6th Cir. 1970) that the Company was guilty of unfair labor practices by failing to bargain in good faith with the Union prior to the calling of the strike in question. All the events of the unfair labor practice strike occurred at the Company's plant in Dayton, Tennessee, where it is engaged in the business of manufacturing and selling ladies' hosiery and childrens' socks.

The pertinent facts are as follows. The unfair labor practice strike began on May 6, 1968, and lasted until December 2, 1968. During this period, some of the striking employees engaged in considerable violence with many vehicles being overturned, many more being impeded when attempting to enter or leave the Company premises or being denied completely the right to enter or leave, and there were incidents of egg and rock throwing resulting in much property damage and personal injury. On the third day of the strike, an injunction was entered by the local Chancery Court of the State of Tennessee against further picket line violence. Nevertheless, the violence continued.

Meanwhile, the Company attempted to continue operations by retaining non-striking employees and hiring new employees while the strike was in progress. During the first week in June, 1968, the Company began offering bus service to transport the non-striking employees to the plant. The strikers, however, succeeded in debilitating this service by jamming aboard the bus at various locations and riding it across the picket lines.

As an example of some of the violence which took place, the Plant Manager testified to an incident he witnessed in which a group of strikers overturned a car filled with ladies who had been working in the plant. He testified that while the ladies were attempting to escape, the participants hurled stones at the car, breaking windows. The women were eventually able to extricate themselves through the broken windshield and when the Plant Manager tried to assist them, he was prevented from doing so by strikers throwing stones at him.

Finally, on June 24, 1968, because of the violence committed during the strike, the plant was left vacant and did not resume production until some date in September, 1968. When the strike ended on December 2, 1968, the Company was faced with various problems of rehabilitating its machinery and equipment, and this prevented it from calling back immediately all of the strikers who wished to be reinstated to employment.

Only the first shift was working on December 2, and then later in December, the second shift began working. On February 10, 1969, the third shift commenced working. A total of 233 strikers had signed to be reinstated on December 2, but for some it took more than five months before they were called back to work.

Before turning to the merits of the Board's findings and conclusions herein, we consider first an argument made by the Company that during the proceedings before the Trial Examiner, the Board's Examiner unlawfully revoked subpoenas *duces tecum* which the Company had requested for the production of evidence in the possession of two Board agents who had investigated the cases for the General Counsel. The Company argues that in so doing, the Board suppressed evidence in its files which would have disproved the complaint against the Company.

■ The subpoenas in question called for the production of "all affidavits, written statements, or documentary evidence received by [the two Board agents] in investigation of" the cases involving the Company. Such requests are extremely broad on their face, and the Company makes no showing in its argument before us as to how it was prejudiced by denial of possession of the evidence. In view of the very lengthy and comprehensive record established before the Board concerning the events of the strike and the activities of the strikers, we can find no such prejudice, and accordingly, the Company's argument must fail. See N.L.R.B. v. Vapor Blast Mfg. Co., 287 F.2d 402 (7th Cir. 1961); Raser Tanning Co. v. N.L.R.B., 276 F.2d 80 (6th Cir.1960).

We next consider the Board's findings that 6 of the strikers were unjustly denied reinstatement by the Company. The original list of employees denied reinstatement by the Company totaled 26. However, the General Counsel challenged the denial of reinstatement as to only 18 of the strikers in the proceedings before the Trial Examiner. We reverse the Board's order as to three of these employees, Helen Brady, Frances Miller Pendleton and Lucille Pendleton.

■ Central to our conclusion that their misconduct warranted the Company in denying reinstatement to them are the findings of the Trial Examiner that they were participants in boarding the Company bus. We do not think the Act protects strikers who engage in planned concerted activities to deny to an employer its right to transport non-striking employees across the picket line. Here this conduct contributed to effect a denial of the Company's protected right to continue plant operations as effectively as if the employees had been physically blocked at the picket line. The Trial Examiner found that the strikers, by riding the bus, inhibited the Company's use of the bus and accomplished this to the extent that for a period of time the Company discontinued using it. Employees wishing to work are entitled to unmolested ingress to and egress from the Company property and the Company, itself, has the right to make proper use of its property during a strike. N.L.R. B. v. Longview Furniture Co., 206 F.2d 274 (4th Cir.1953).

Helen Brady was also identified by the Plant Manager as telling him and a group of supervisory personnel that they could enter the plant but if anyone else tried to come in the strikers were going to "whip some ___." The evidence further supported a finding that she was involved in incidents of blocking people on the picket line as they tried to enter the plant. There was also some evidence that she participated in a rock throwing incident by standing in a group of strikers which the Trial Examiner found was shielding the identity of the rock throwers. The Board blandly discounted this incident, stating that there was no probative evidence that she was part of a conspiracy to shield the rock throwers.

The Pendletons were identified as having on various occasions impeded cars and trucks from crossing the picket

line at the plant. Both women were found guilty of contempt for violating the State Court injunction against picket line disturbances. There was evidence of the Pendletons' participation in other violent acts during the strike. Though both women denied any such participation, the Trial Examiner indicated that he considered their testimony to be less than credible.

■ For each of the above three employees, we conclude that the evidence is not capable of the interpretation that they were engaged only in ordinary incidents which are to be expected in the maintenance of a picket line. Rather, the jamming of the bus so as to deny its use by employees wishing to work is serious misconduct and, when viewed in the context of the extreme violence which generally accompanied this strike, we hold that the Company's denial of reinstatement was reasonable and proper. See W. J. Ruscoe Co. v. N.L.R.B., 406 F.2d 725 (6th Cir.1969).

As for the remaining three employees ordered to be reinstated by the Board, we affirm the Board's action. There is substantial evidence on the record to support the conclusion that strikers Margaret Irwin and Nancy Reed, while on the picket line, were involved in only minor isolated incidents which were of little or no consequence, particularly since they occurred at the inception of the strike when the emotions of the participants were at a high pitch. Some minor confrontations between strikers and non-strikers may be expected to occur in a labor dispute precipitated by an employer's unfair labor practices. See N.L.R.B. v. Thayer Co., 213 F.2d 748 (1st Cir. 1954); Republic Steel Corp. v. N.L.R.B., 107 F.2d 472, 479 (3d Cir.1939).

■ As for striker Barney Henderson, the Trial Examiner found that he was not present during an egg throwing incident complained of by the Company and we think the evidence permits that conclusion. The alleged act and the particular striker's guilt thereof must be proven before the Company is justified in denying him reinstatement. N.L.R.B. v. Burnup and Sims, Inc., 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964); N.L.R.B. v. Cambria Clay Products Co., 215 F.2d 48 (6th Cir.1954).

We next consider the final two arguments of the Company and we affirm the Board's conclusions as to both. The Company contends first that the Trial Examiner erred in determining that the Company wrongfully failed to furnish the Union with a departmental seniority list after the strike ended. The main thrust of the Company's argument under this issue is its assertion that the Union was offered a plant seniority list as a substitute and that the Union accepted this offer.

Even though the Union was given a plant wide seniority list, its request for and need to be furnished with a departmental seniority list was well known to the Company. Without the list the Union was handicapped in its obligation to process grievances because it had initiated grievance procedures with the Company concerning the departmental seniority of some employees as determined by the Company and, without the requested information, the Union was unable to process the grievances. The Company was following departmental seniority in reinstating the striking employees, thus rendering the information to be very basic to the Union's ability to protect the 233 employees desiring to be reinstated.

■ The United States Supreme Court had stated that "[t]here can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties. National Labor Relations Board v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027." N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 435–436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967). The requested information was readily available to the Company and was relevant to the job rights of the employees in the bargaining unit. See N.L.R.B. v.

Rockwell-Standard Corp., 410 F.2d 953 (6th Cir.1969); N.L.R.B. v. Gulf Atlantic Warehouse Co., 291 F.2d 475 (5th Cir.1961). In such circumstances, there is substantial evidence on the record as a whole to support the Board's finding of a Section 8(a) (5) violation by the Company's refusal to furnish the requested departmental seniority list.

On the question of whether the Company violated the Act by delaying the reinstatement of some of the strikers following the strike, the Company admits that some 39 employees hired during the strike continued to work, while many striking employees had to wait up to five months to be recalled. The Trial Examiner found that the Company thereby discriminated against those striking employees not immediately reinstated to the extent that those workers were not recalled who performed the same or similar work.

██ It is clear that upon the conclusion of an unfair labor practice strike, the striking employees are entitled to reemployment whenever a job "for which the striker is qualified becomes available." N.L.R.B. v. Fleetwood Trailer Co., 389 U.S. 375, 381, 88 S.Ct. 543, 547, 19 L.Ed.2d 614 (1967). The employer has the burden of showing that such jobs were not available to returning strikers, and herein the Company failed to show that the strikers who were delayed reinstatement were unqualified for any of the 39 job units filled by other workers. *Fleetwood Trailer Co., supra,* at 378, 88 S.Ct. 543. We conclude that the Board's findings that the Company unjustifiably delayed the reinstatement of the striking employees is supported in the record and such finding is further strengthened in view of the Company's past unfair labor practices against the Union.

The Board's order will be enforced with the exception that reinstatement of strikers Frances Miller Pendleton, Lucille Pendleton, and Helen Brady is denied.