NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BERG–AIRLECTRO PRODUCTS COM-
PANY, Respondent.

No. 13464.

United States Court of Appeals
Seventh Circuit.

May 1, 1962.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., National Labor Relations Board, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Russell Packard, Chicago, Ill., for respondent.

Before CASTLE, KILEY and SWY-GERT, Circuit Judges.

KILEY, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board [1] entered in a proceeding under § 10(e) of the National Labor Relations Act as amended.[2] The Board, so far as pertinent here, found that respondent discharged employee Odessa Stewart because of union activity in violation of §§ 8(a) (1) and (3) [3] of the Act, and ordered respondent to restore her to the position formerly held by her.

Respondent is a Chicago manufacturer, and Odessa Stewart was its employee from 1953 until July 2, 1959.[4] She was also vice-president of Local 5806, of the United Steelworkers of America, AFL–

---

1. Reported at 131 NLRB No. 123 (June 5, 1961).

2. 29 U.S.C.A. § 160(e).

3. 29 U.S.C.A. §§ 158(a) (1), (3).

4. Her employment had been broken several times by layoffs and rehirings.

CIO, from its formation in March, 1959. The Local was formed following a collective bargaining agreement made in March, 1959 between respondent and the parent union. Disappointed over the conduct of the Local officials in resolving disputes with respondent's owner, Odessa Stewart left work early July 1 to file a complaint before the NLRB office in Chicago. What transpired soon after she left and on the next day gave rise to this proceeding.

■ The factual issue before the trial examiner was whether Odessa Stewart had quit work or was discharged. The trial examiner decided the issue in her favor, and the Board adopted the examiner's findings, conclusions, and recommendations with respect to that issue, which alone is relevant on this appeal, and entered the order sought to be enforced. The question is whether there is substantial evidence "in the light that the record in its entirety furnishes," Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L.Ed. 456 (1951), to support the Board's decision.

In addition to her vice-presidency of the Local, Odessa Stewart was a member of the negotiating committee working out an agreement on wages with respondent before midnight of June 30, 1959 in accordance with the collective bargaining agreement.

About the middle of June, 1959, when women employees alone were laid off in the movement of defendant's machinery to a new building, she complained to respondent's owner, Berg, of violation of seniority provisions of the collective bargaining agreement. On June 17 the union threatened a strike over Berg's statement that he could not afford a wage increase. He countered with a forty-five minute lockout, but the employees did not return to work until June 22. The Local, on June 28, with only fourteen of about seventy-eight members being present, voted to strike June 30 if no raise was given. At noon on the 30th of June fifty members, after a meeting with Berg, voted to extend the contract, due to expire at midnight, rather than to strike. In the afternoon the owner and the negotiating committee reached an impasse on the duration of the extension. That evening the committee, with Odessa Stewart absent, agreed to the extension which Berg had offered.

The next morning, July 1, the employees were gathered to learn of the extension agreement. Odessa Stewart, whose anger had been increasing daily, learned of the previous night's agreement. She "pulled" her time card, erased the "punch in time," demanded to know who filed the agreement, asked, "I wonder how much did they get paid for this," left the meeting and went to the NLRB office. She there filed charges against the president of the Local, not in issue in this proceeding, and was told to return to work. She called the plant and spoke to the brother of the Local president, who told her she had been discharged. She reported at the plant the next morning, and, after a conversation with superintendent Porter, left the plant.

There was no doubt that Odessa Stewart was a "tense and aggressive woman," [5] and in pursuing her function as an officer of the Local and a member of the negotiating committee she antagonized her employers, superiors, union officers, and some members of the union. She was suspicious and critical of the president of the Local and it is plain that he, Berg, and superintendent Porter would have been glad to have her quit work. This has considerable bearing on the resolution of the question whether she quit or was discharged.

■ We think the record amply supports the trial examiner's finding that the conduct of the respondent was "tantamount to discharging" Odessa Stewart.

About twenty minutes after she left the plant July 1 to go to the NLRB office, Porter discovered that she had gone. He took her time card out of the rack after saying she "had automatically quit

---

5. So the trial examiner concluded.

her job when she walked off without telling anyone where she was going." But Porter testified that employees "take a day off" without permission "all of the time." For these infractions, customary disciplines were warning slips and layoffs. The Board found that respondent's treatment of Odessa Stewart was "scarcely in keeping" with the company's custom.

July 2, when she came to the plant and found her time card missing, Odessa Stewart asked superintendent Porter if she was fired. He answered, "No Odessa, you quit." She said, "Did I tell you I had quit?" He said, "No, you didn't tell me * * *." She said, "I didn't quit; I went to the Labor Board." He answered, "You still quit." Porter later told the president of the Local that she had quit.

There is no issue about the work record of Odessa Stewart. The presumption is, however, that, having worked almost continually since 1953, she was a satisfactory employee.[6]

The respondent contends here that the record does not support a finding that there was a "constructive discharge" because there was no "affirmative action" by the owner forcing Odessa Stewart to quit. It cites Cullman Electric Co-op., 99 NLRB 753, 769 (1952) for that rule to support this argument. We think, however, that since the Board found in effect, with substantial support in the record that there was "discriminating treatment * * * with respect to privileges" Ibid., of employees as to Odessa Stewart, this case would come within the rule. Other NLRB cases applying the same rule are distinguished on their facts.

Respondent also relies upon Progressive Mine Workers of America, International Union v. National Labor Relations Board, 7 Cir., 187 F.2d 298 (1951) to support its argument that there was no hostility in this case between the owner and the union such as the rule stated in the Progressive Mine Workers case requires. The rule stated there, however, on page 303, is, "There is no case * * * where an employer has been held guilty of an unfair labor practice in the absence of * * * proof of hostility toward the union or the *employee* * * *." (Emphasis added.) We need not refer to other cases cited.

The decision of the Board finds support in this court's opinion in National Labor Relations Board v. Peerless Products, Inc., 7 Cir., 264 F.2d 769 (1959), which enforced an order of the Board to reinstate an employee where the employer had contended she had quit. The decision also finds support in National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753 (1940), where this court upheld the Board, on much less evidence than we have here, on the question whether an employee had resigned or was discharged. Also, in National Labor Relations Board v. Greensboro Coca Cola B. Co., 4 Cir., 180 F.2d 840 (1950), where the court in resolving a quit or discharge issue in favor of the finding of discharge by the Board took into consideration the employee's long record of service and insufficient reason given by the company for concluding that the employee had quit. Finally, we think that the case of National Labor Relations Board v. Stowe Spinning Co., 4 Cir., 165 F.2d 609, 615 (1947), reversed on other grounds, 336 U.S. 226, 69 S.Ct. 541, 93 L.Ed. 638 (1949), is relevant to the case at bar because the court there considered the "alacrity" with which the overseer "seized on" the employee's statement "that he was quitting."

We conclude that the Board's order to reinstate Odessa Stewart and to make her whole for the loss of pay suffered by reason of discrimination against her will be enforced.

6. The trial examiner so concluded.