**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRUMBULL ASPHALT COMPANY OF DELAWARE, Respondent.**

**No. 17374.**

United States Court of Appeals
Eighth Circuit.

Feb. 14, 1964.

Vivian Asplund, Atty., N. L. R. B., Washington, D. C., made argument for petitioner and filed brief with Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., Washington, D. C.

Stanley V. Shanedling, Minneapolis, Minn., made argument for respondent and filed brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

The National Labor Relations Board seeks enforcement here, pursuant to § 10 (e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(e), of its 3-member-panel order issued November 23, 1962, to Trumbull Asphalt Company of Delaware. The Board's decision and order are reported at 139 N.L.R.B. No. 97. The union concerned is a Teamsters local.

Trumbull, a national concern (see Trumbull Asphalt Co. of Del. v. N. L. R. B., 314 F.2d 382 (7 Cir. 1963), cert. denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032), operates a plant in Minneapolis where it has a small number of employees and where it is engaged in the processing and blending of asphalt products. Six employees (Johnson and five others) are claimed to have been discharged there on July 27, 1961, two (Maxwell and Kollodge) on September 1, and a ninth (Guck) on September 8. The plant was under organization pressure and was struck on September 15.

The trial examiner concluded that Trumbull violated § 8(a) (1) and (3) of the amended Act, 29 U.S.C.A. § 158(a) (1) and (3), by discriminatory discharges of the nine employees and by interrogation of one of them. The Board panel adopted the examiner's findings and conclusions and, in addition, allowed interest on the back pay awards. One member, however, dissented as to the interest and also dissented, because of picket line misconduct, from the reinstatement and back pay for employees James Maxwell and Rollo Kollodge.

Trumbull's position here is (a) that the findings of discriminatory discharge and of improper interrogation are not supported by substantial evidence and (b) that the Board erred in issuing a remedial order in favor of Maxwell and Kollodge.

In N. L. R. B. v. Byrds Mfg. Corp., 324 F.2d 329, 332–333 (8 Cir. 1963), we had recent occasion to say:

"These discharge issues are difficult and sensitive when termination coincides with union activity. The employee and the Board present plausible cause for continued employment * * * and would tie his discharge solely to union sympathy or activity known to the employer. Management in turn presents equally plausible cause for the discharge * * * and would tie the discharge to time-honored and accepted management prerogatives wholly unrelated to union activity or sympathy * * *. The trier of fact must choose between these two. * * * [I]ts decision, although always outrageous to the losing party and hard for it to accept, is, if supported by an adequate evidentiary basis, not to be retried by this court."

Judge Sanborn expressed it more concisely in N. L. R. B. v. Wilson Concrete Co., 304 F.2d 1, 2 (8 Cir. 1962), when he said, "The Board is the trier of the facts. This Court cannot retry them. Errors of fact committed by the Board, if any, are not subject to correction here".

A. We have carefully reviewed the entire record. It suffices to say:

1. That on the issue of discharge of the six employees on July 27 for concerted activities protected under § 7, the record contains evidence that three of the six met with the plant supervisor and a fore-

man on June 19 and again on July 24; that they presented demands for improved working conditions; that there was a further meeting on July 27 with all six present; that management polled the six as to their strike intentions; that the men were told they had quit and were promptly paid off; that the production manager told the foreman the following day that "if you have one bad apple in the bag you don't leave that one in to spoil the whole works, you get rid of it", and that he should have fired the leader and perhaps another; that the manager, at the airport the next day, when Johnson applied for reinstatement, said he could have his job back but "to keep my feet on the floor, keep my nose clean, and keep away from trouble"; and that the superintendent said, when he recalled another, "we would forget all about it and start over again, no hard feelings * * * if I would come back to work, fine". All this, together with the inferences appropriately to be drawn therefrom, while perhaps presenting not too strong a case, is sufficient to sustain the Board's findings and conclusions that the men were discharged and that their discharge violated § 8(a) (1). This is so despite other evidence that two of the six were promptly rehired; that the company had a policy against rehiring employees discharged for cause; that the leader of the conferring employees threatened to strike and to bring a union in; that the manager told the six he could not accept an ultimatum and that they had quit and were not being fired; that the employees told a man at a bar that they had not been fired; and that there had been no reprimand, because of their demands, to any of the six and no refusal to meet.

It is true that the presentation of an ultimatum early in negotiations is usually not the best way to achieve a desired end. Neither is it likely to promote accord between labor and management. But these six men were not organized, they had no bargaining representative, and they perhaps acted as, in their inexperience, they thought best. See N. L. R. B. v. Washington Aluminum Co., 370

U.S. 9, 14–15, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). Employees do not usually place their jobs on the line in this manner. We have said before "we are unable to conclude that ill judgment or lack of consideration add up to illegality". N. L. R. B. v. Solo Cup Co., 237 F.2d 521, 526 (8 Cir. 1956); see N. L. R. B. v. Washington Aluminum Co., supra, p. 16 of 370 U.S. pp. 1103–1104 of 82 S.Ct., 8 L.Ed. 2d 298.

■■ The fact of discharge of course does not depend on the use of formal words of firing. It is sufficient if the words or action of the employer "would logically lead a prudent person to believe his tenure had been terminated". Putnam v. Lower, 236 F.2d 561, 566 (9 Cir. 1956); N. L. R. B. v. Cement Masons Local No. 555, 225 F.2d 168, 172 (9 Cir. 1955); Johnson v. Crookston Lumber Co., 92 Minn. 393, 100 N.W. 225 (1904); Neid v. Tassie's Bakery, Inc., 219 Minn. 272, 274, 17 N.W.2d 357, 358; Anderson v. Twin City Rapid Transit Co., 250 Minn. 167, 175, 84 N.W.2d 593, 599. We think this test was met here and that there was justification for such a conclusion on the part of the six employees. The case, while not identical, is close on its facts to N. L. R. B. v. Central Oklahoma Milk Producers Ass'n, 285 F.2d 495, 497–498 (10 Cir. 1960). See, also, N. L. R. B. v. Berg-Airlectro Prod. Co., 302 F.2d 474, 475–476 (7 Cir. 1962), and N. L. R. B. v. Cone Bros. Contracting Co., 317 F.2d 3, 7 (5 Cir. 1963), cert. denied, 375 U.S. 945, 84 S.Ct. 353.

■ 2. That on the issue of discriminatory discharge of Maxwell, Kollodge and Guck in September the record again is sufficiently supportive. Evidence as to Maxwell's union activity; his discussing the union with other employees; his obtaining signed authorization cards; the union membership of the three; the discharge of Maxwell and Kollodge only two or three days after the union advised Trumbull that a majority had signed cards; the absence of warnings; a commendation to Maxwell; the superintendent's inquiry of an employee about Kollodge's work and his being told that "he

was doing all right"; the simultaneous discharge of Maxwell and Kollodge without immediate precipitating incident; the production manager's "bad apple" comment and criticism of the foreman; the lack of any time connection between the discharge and management's complaints about Maxwell; giving Maxwell a day off in the face of an asserted earlier decision to discharge him; the discrepancy in the superintendent's testimony as to the reasons for Guck's discharge; and the superintendent's awareness of union activity in view of his attempt to ascertain from Johnson the identity of union sympathizers among the working force, plus the inferences reasonably flowing therefrom, are enough.

Again, this is so despite the presence of evidence, some of it obviously in conflict with the foregoing, that Maxwell and Kollodge were only probationary employees; that the superintendent decided to terminate them on August 28, a day or so before he first learned of union activity, but let them work out the week to September 1 in accord with company policy; that Maxwell on August 11 had failed to show up for work and was admonished; that on August 18 he had failed to put a penetration into a bath on time and was warned; that at about the same time he failed to identify one of three tank cars; that Kollodge made subnormal mistakes in gauging tank contents; that Kollodge was terminated because he did not have the aptitude for the job; that Guck was terminated because he was not qualified; that Maxwell was advised of his termination by wire because he was off work on the day of termination; and that other employees engaged in the same union activities were not discharged, and despite opposing inferences which a trier of fact might have drawn but here did not.

■ 3. That on the issue of improper interrogation the record, considered as a whole, is not adequate. The most it contains is evidence that the superintendent on August 30, just after he had learned from the union that it claimed a majority, questioned Johnson as to who "was for the Union" and that a few days later he again asked Johnson who the head of the union was. Neither the superintendent nor Johnson mentioned names and the superintendent did not speak against the union. The trial examiner himself observed that "The interrogation of Johnson by [the superintendent] is not important as such, except to demonstrate that [he] did have knowledge of union activity" and assumed that Johnson knew who the union sympathizers were. This we think falls short of what is condemned by § 8(a) (1). The situation is governed by our decision in N. L. R. B. v. Twin Table & Furniture Co., 308 F.2d 686 (8 Cir. 1962), the record in which disclosed more specific questioning than that here. See, also, N. L. R. B. v. Montgomery Ward & Co., 192 F.2d 160, 163 (2 Cir. 1951).

■ B. A more bothersome question is the legal effect of the picket line conduct of Maxwell and Kollodge. There is no controversy as to the facts:

The plant was struck on September 15, 1961. Maxwell and Kollodge were on the picket line. Three incidents took place: (1) The two, with another, on that day warned employee Johnson not to come to work. They did not stop him from entering the plant but they told him he "had better have good window breakage" for his car. Johnson was put in fear of bodily harm. Two days later the same three men told Johnson to quit work and to leave in fifteen minutes or "the rest of the Union guys would get [him] in the morning". Johnson testified that this upset him and that he was "probably" in tears. He left and only five weeks later returned to work; he lost work time in the interim. He was never attacked physically and his car was not damaged. (2) On the 16th a roofing company attempted a delivery by truck. Maxwell threw himself in front of the moving vehicle. The driver managed to halt the truck in time but it was damaged by the sudden stop. (3) A week after the strike started, employee Vanas was stopped when pickets' cars blocked the driveway. Maxwell walked up to him with "a pretty

good sized rock" in his hand and told him "the screws were on, I couldn't go through the picket line any more. * * * I couldn't come to work that night * * and I shouldn't be caught sneaking because they would beat me up and to watch my family and child, take good care of my car because they might put sugar in the gas tank and needs a new paint job". He also said that Vanas should take care of his family and they knew where he lived. Vanas, however, continued to work. Neither he nor any member of his family was physically harmed and his car was not damaged.

The Board majority stated that "account must be taken of the provocation inherent in the unfair labor practices committed" by Trumbull "as well as of the realities of industrial life"; relied primarily upon Judge Maris' frequently quoted language in Republic Steel Corp. v. N. L. R. B., 107 F.2d 472, 479 (3 Cir. 1939); noted that the acts were "mere threats which were never carried out" and that the employees' acts were not disloyal or insubordinate to the employer and would not "cause strife or hamper production"; and concluded that "the misconduct in this case, if any, was not of such character as would render Maxwell and Kollodge unfit for further employment," and that anything less than reinstatement with full back pay would not remedy the effects of the unfair labor practices or adequately protect rights guaranteed by the Act.

Clearly the Board's own decision in Ekco Products Co. (Sta-Brite Division), 117 N.L.R.B. 137, 148–49 (1957), supports the dissenting member's position.

The Supreme Court and the Board have "fashioned the doctrine that the Board should deny reinstatement to strikers who engaged in strikes which were conducted in an unlawful manner or for an unlawful objective". N. L. R. B. v. Drivers, etc. Local 639, 362 U.S. 274, 281, 80 S.Ct. 706, 710–711, 4 L.Ed.2d 710 (1960). Thus reinstatement relief has not been afforded to sitdown strikers, N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939),

or to those who demanded that an employer violate an existing bargaining agreement, N. L. R. B. v. Sands Mfg. Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682 (1939), or to mutineers, Southern S.S. Co. v. N. L. R. B., 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942). At the same time, the Court has indicated that "a moment of animal exuberance" does not authorize an incursion upon the guaranty of free speech or taint what is otherwise peaceful picketing. Milk Wagon Drivers Union of Chicago Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 293, 61 S.Ct. 552, 85 L.Ed. 836 (1941).

Some of the courts of appeals have placed the line between these two poles at the point where the conduct ceases to be "not activated by improper motives" and becomes "so violent or of such serious character as to render the employee unfit for further service". Then it is the function of the Board "to weigh the conflicts * * * and to determine in each case whether the interest of the employees or the interest of the employers should be held paramount". N. L. R. B. v. Illinois Tool Works, 153 F.2d 811, 815–816 (7 Cir. 1946); N. L. R. B. v. Kelco Corp., 178 F.2d 578 (4 Cir. 1949), (condemning "brutal violence and intimidation of serious character, ganging up on a nonstriking employee and chasing him to his home in one case, knocking down an employee and beating him publicly in another"); N. L. R. B. v. Cambria Clay Prod. Co., 215 F.2d 48, 54 (6 Cir. 1954); N. L. R. B. v. Longview Furniture Co., 206 F.2d 274, 276 (4 Cir. 1953), (condemning "insulting and profane language calculated to publicly humiliate and degrade"); United Steelworkers of America, C.I.O. v. N. L. R. B., 100 U.S.App.D.C. 170, 243 F.2d 593, 595–596 (D.C.Cir. 1956), reversed on other grounds, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383; N. L. R. B. v. Wichita Television Corp., 277 F.2d 579, 584–585 (10 Cir. 1960), cert. denied, 364 U.S. 871, 81 S.Ct. 113, 5 L.Ed.2d 93 (holding as non-disqualifying 2-abreast picketing, carrying large obtrusive umbrellas and heckling non-striking employees); N. L. R. B. v. Efco Mfg., Inc., 227 F.2d

675 (1 Cir. 1955), cert. denied 350 U.S. 1007, 76 S.Ct. 651, 100 L.Ed. 869, (holding as non-disqualifying "coarse and vulgar language", ridicule and insolence to a plant manager, the court, however, drawing a distinction where the employer is placed "in direct fear of an imminent beating"). And it has been said that "minor acts of violence do not deprive strikers of the right to reinstatement". N. L. R. B. v. Wallick, 198 F.2d 477, 485 (3 Cir. 1952); N. L. R. B. v. Buitoni Foods Corp., 298 F.2d 169, 175 (3 Cir. 1962); Republic Steel Corp. v. N. L. R. B., supra, 107 F.2d 472, 480 (3 Cir. 1939), cert. denied as to this point, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1027; 310 U.S. 655, 60 S.Ct. 1072, 84 L.Ed. 1419. In N. L. R. B. v. Morrison Cafeteria Co., 311 F.2d 534, 538 (8 Cir. 1963), this court did not disapprove the reinstatement of an employee who had cursed and offered to fight a supervisor; we did so on the ground that, on the record as a whole, "we cannot say as a matter of law that the decision of the Board in that respect is wrong".

It may be true, as the Board urges in its brief, that none of the picket line conduct of Maxwell and Kollodge "caused any personal injury or any appreciable harm to respondent's business". This was fortunate. It is also true, however, that the picket line conduct of these two men was sufficiently obstructive and threatening to place employee Johnson in fear of bodily harm and to cow him to the extent that he stayed away from his job for five weeks; that Maxwell's extreme measures resulted in damage to a delivery truck; and that their conduct was not limited to verbal abuse or heckling but included lying down in front of the moving truck and the purposeful display of a good sized rock. These incidents were not the urge of "a moment of animal exuberance". They took place over a period of seven days. Although less serious than a mutiny or a sitdown strike, we feel that this was unlawful conduct of a kind the Act was not designed to protect; that if it is to be ignored here, the purposes of the Act would be thwarted and not advanced; and that it is not necessary that personal injury result before conduct is disqualifying. We conclude that on the facts established in this record Maxwell and Kollodge are not entitled to reinstatement or to back pay for September 15, 1961, and thereafter.

C. The majority's award of interest on back pay was not contested by Trumbull in its brief or at oral argument. We therefore have no reason to deny enforcement as to this detail. N. L. R. B. v. Byrds Mfg. Corp., supra, p. 333 of 324 F.2d.

The petition for enforcement is denied with respect to (1) the interrogation issue and paragraph 1(b) of the proposed order and (2) the reinstatement of employees Maxwell and Kollodge and back pay, if any, due them for the period from and after September 15, 1961. In all other respects it is granted.