**L.A. WATER TREATMENT, DIVISION OF CHROMALLOY AMERICAN CORPORATION, Petitioner,**

and

**Daniel J. Mullin, an Individual,**

**United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 398, AFL–CIO,**

**L.A. Water Treatment, Division of Chromalloy American Corporation, Petitioner,**

and

**International Union of Operating Engineers, Local 501, AFL–CIO,**

**Waterco Employees Association,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1113.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 22, 1988.

Decided May 3, 1989.

suggestions made in support of the govern- ment's motion. *See* D.R. at 32.

James N. Foster, Jr., St. Louis, Mo., for petitioner.

Judith A. Dowd, Washington, D.C., for respondent.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

L.A. Water Treatment appeals the National Labor Relations Board's finding that it discharged economic strikers in violation of 29 U.S.C. § 158(a)(1), (3). *See L.A. Water Treatment,* 286 N.L.R.B. 88 (1987). We reverse.

L.A. Water Treatment (the Company) designs, fabricates, assembles, installs, and services water treatment systems. In the spring of 1981, the Company was notified by customers that two major jobs would be delayed. On top of this development, the Company subcontracted a substantial portion of its remaining work in accordance with its past practice. As a result, the Company permanently laid off fifteen of its employees.

On April 22, 1981, eleven employees who had been retained by the Company and the fifteen employees who had been laid off began picketing the Company's facility because the layoffs had not been based on seniority. Soon after, the Company sent the following letter to the eleven retained employees:

> Confirming the company representative's discussion with you on this date, on April 16, 1981 there was a permanent reduction in our shop labor force. This reduction in personnel was dictated solely by economic considerations. The company has the responsibility to make sound business decisions. At the time of the cut in shop manpower those remaining employees were given reasonable assurances that there would not be any further permanent reductions.
>
> Those individuals affected by the reduction in shop personnel were selected only after an extensive review of fair and impartial factors, and other considerations including an analysis of our current and future labor force requirements. The employees affected by the reduction may pursue whatever means of redress they deem appropriate.
>
> We have work for all of our employees to do. In fact we are committed to fulfill our orders with our customers and need every person in our present shop labor force to carry out this work.
>
> We recognize that you, as employees, have the protected right to take concerted action by not returning to your jobs. However, you must understand that the Company also has the right to protect its interests. These interests are that we must have adequate manpower to produce our products.
>
> We urge all employees engaged in this work stoppage to return to work. There is work here for you. In the event that you are not at your job at the beginning of the work day on [varying dates depending on the date of mailing], then management will take the necessary steps to permanently replace those who have not returned to their jobs.

The eleven employees continued to strike. The Company then sent a second letter.

> As of this date we have hired a permanent replacement for your job classification of [_____].
>
> You are no longer employed by L*A/Water Treatment Division of Chromalloy. Consequently, you are not entitled to or enrolled in any of the benefits of the Employee programs.
>
> In the event you have earned wages, accrued vacation, or sick pay due to you from your former employment with us, you will find it enclosed.

The strike continued until August 4, 1981. The Company did not respond to the employees' original protest.

The strikers' union, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 398, AFL–CIO (the Union), charged the Company with engaging in unfair labor practices prohibited by the National Labor Relations Act. The Board found that (1) the Company's decision to lay off the fifteen employees was based on objective criteria and was not discriminatorily motivated; (2) the strike was an economic strike; (3) the first letter from the Company lawfully informed the strikers that they were subject to permanent replacement; and (4) the second letter from the Company discharged the strikers in violation of 29 U.S.C. § 158(a)(1), (3).

■ We review the Board's decision by determining whether it correctly applied the law and whether its findings of fact are supported by substantial evidence on the record. *See* 29 U.S.C. § 160(e). We agree with the Board that the strike was economic in nature. The Company was therefore justified in replacing the strikers with permanent employees. *See Vulcan Hart Corp. v. NLRB,* 718 F.2d 269, 274 (8th Cir.1983); *see also Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants,* — U.S. ——, ——, 109 S.Ct. 1225, 1230, 103 L.Ed.2d 456 (1989). The strikers, however, remained "employees" under 29 U.S.C. § 152(3) and were entitled to reinstatement if vacancies arose. *Randall, Div. of Textron, Inc. v. NLRB,* 687 F.2d 1240, 1244 (8th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983). The strikers were not entitled to displace the permanent replacements. *Id.*

■ We address the question whether the strikers were discharged by asking whether a reasonable person would have logically understood from the Company's actions that he was terminated. *NLRB v. Hale Mfg. Co.,* 570 F.2d 705, 708 (8th Cir. 1978); *NLRB v. Trumbull Asphalt Co.,* 327 F.2d 841, 843 (8th Cir.1964). In answering this question, we do not look at the Company's second letter in isolation but rather evaluate its import in the context of the surrounding circumstances. *See Vulcan,* 718 F.2d at 275; *Southwestern Pipe, Inc. v. NLRB,* 444 F.2d 340, 352 (5th Cir. 1971) (must look at all actions of employer to determine meaning of letter).

■ The first letter advised the strikers that if they did not return to work they would be permanently replaced. This set the stage for the second letter, which informed the strikers that they had indeed been permanently replaced, advised them that they were no longer entitled to employee benefits, and tendered them the monies due from earned wages, accrued vacation, or accrued sick pay. The letter thus stands as a notification to the strikers of their having been permanently replaced and of the respective rights of the Company and the strikers resulting from that replacement.[1]

Pointing to the language "You are no longer employed by L*A/Water Treatment Division of Chromalloy," and "former employment with us," the Board contends that the second letter indicated that the Company was actually discharging the strikers. This language standing alone, however, cannot be interpreted to indicate discharge when an evaluation of the entire context indicates otherwise. *See Vulcan,* 718 F.2d at 275; *Southwestern Pipe,* 444 F.2d at 352.

We note that there is no evidence that the strikers actually believed they were discharged. In three separate charges filed with the Board, the Union alleged that the strikers were permanently replaced and that this replacement chilled the exercise of

---

1. An employer is not required to finance a strike against itself by paying wages or other similar expenses to the strikers. *See E.L. Wiegand Div. v. NLRB,* 650 F.2d 463, 468 (3d Cir. 1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982). The employer is required, however, to pay earned or accrued benefits to strikers. *Id. See also NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 32, 87 S.Ct. 1792, 1796, 18 L.Ed.2d 1027 (1967) ("the company's refusal to pay vacation benefits to strikers was discrimination in its simplest form").

rights by other employees. Nowhere within these charges, however, were there any allegations of discharge. Although the strikers' subjective understanding is not at issue here, we find it to be an indication that a reasonable person would not have understood the second letter to be a discharge.

The record does not support the conclusion that the strikers were discharged. Accordingly, we reverse the Board's order.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I would hold that the plain language in the second letter and the employer's treatment of the returning strikers would have logically led a reasonable person to believe that he or she had in fact been discharged.

"The test of whether or not an employee has been discharged depends upon the reasonable inference that the employees could draw from the language used by the employer." *NLRB v. Hale Manufacturing Co.*, 570 F.2d 705, 708 (8th Cir.1978) (citations omitted). "The fact of discharge of course does not depend on the use of formal words of firing. It is sufficient if the words or action of the employer 'would logically lead a prudent person to believe his [or her] tenure had been terminated.'" *NLRB v. Trumbull Asphalt Co.*, 327 F.2d 841, 843 (8th Cir.1964). If the second letter sent by the employer had been "a notification to the strikers of their having been permanently replaced and of the respective rights of the Company and the strikers resulting from that replacement," at 1152, I would join the majority opinion. In my view, however, the second letter did not limit itself to setting forth the employer's right to hire permanently replaced employees or outlining the strikers' rights as permanently replaced employees. The plain language used in the second letter—"You are no longer employed" and "former employment"—clearly indicated that the employer had terminated the employment relationship. The information about the termination of employee benefits and the enclosure of checks representing the amount

of any accrued benefits were also consistent with discharge.

Moreover, the employer's treatment of the former strikers upon their return to work was inconsistent with their status as employees. The employer's treatment of the returning strikers as *former* employees distinguishes the present case from *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 274–75 (8th Cir.1983). In that case, despite the equally strong termination language used in the letter in question, the employer did not treat the returning strikers as new employees and ultimately reinstated them. We held that in that context the employer's letter did not operate as a discharge. *Id.* at 275. By contrast, in the present case the employer treated one returning striker as a job applicant and it has not reinstated any of them.

Whether or not the employees were discharged is determined under an objective test. The subjective beliefs of these particular strikers or the unfair labor practice charges their union representatives decided to assert in subsequent labor proceedings are not relevant to this determination.

Because I would hold that the second letter did in fact discharge the eleven strikers in violation of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), I would deny the petition for review and enforce the order of the Board.