11-1757-cv
Berman v. Tyco

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of July, two thousand twelve.

PRESENT:
> PETER W. HALL,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> RICHARD M. BERMAN,*
> > *District Judge.*

_____

JOSHUA M. BERMAN,

> > *Plaintiff-Appellant*,

> > v.                                                    No. 11-1757-cv

TYCO INTERNATIONAL LTD., a Bermuda Corporation, and
TYCO INTERNATIONAL (US) INC., a Nevada Corporation,

> > *Defendants-Appellees.*

_____

FOR APPELLANT:            BARRY J. FRIEDBERG, Trachtenberg Rodes & Friedberg LLP, New York, New York.

FOR APPELLEES:            JOHN H. KAZANJIAN (Edward M. Grauman, John H. Paul, *on the brief*), Beveridge & Diamond, New York, New York.

_____

* The Honorable Richard M. Berman of the United States District Court for the Southern District of New York sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** the judgment of the district court is VACATED and REMANDED.

Plaintiff-Appellant, Joshua Berman, initiated this action in New York Supreme Court alleging that his former employer, defendants-appellees, Tyco International Ltd. and Tyco International (US) Inc. (together "Tyco"), failed to pay his salary for a five-month period in 2002 and failed to pay him severance benefits associated with his termination.   Berman seeks damages for unpaid salary and severance pay under theories of breach of contract, promissory estoppel, quantum meruit, unjust enrichment, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Tyco removed the action to federal court and moved for partial summary judgment on Berman's ERISA claim and his state law breach of contract claim concerning his severance benefits.   In that motion, Tyco asserted that Berman was not a covered beneficiary of Tyco's severance plan, that he waived his right to receive severance under the terms of his employment agreement, and that he voluntarily resigned and was therefore ineligible for severance benefits.   Tyco also argued that its severance plan is not governed by ERISA.   The district court concluded that Berman voluntarily terminated his employment agreement with Tyco and had presented no evidence to suggest that he was constructively discharged, and therefore, Berman had failed to demonstrate a material issue of fact with respect to the voluntariness of his termination.   We assume the parties' familiarity with the factual background, procedural history, and the issues presented on appeal.   We elaborate only as necessary to explain our decision to vacate the district court's grant of partial summary judgment and remand for further proceedings.

I.      **Jurisdiction**

This is an appeal from a grant of partial summary judgment, which, in the usual course, would

preclude our exercise of jurisdiction. *See Petrello v. White,* 533 F.3d 110, 113-14 (2d Cir. 2008). For reasons that follow, however, the unusual posture of this case in the district court permits us to exercise jurisdiction on appeal. On March 31, 2011, the district court determined that Berman's separation from Tyco was voluntary and thus granted Tyco's motion for partial summary judgment on Berman's breach of contract and ERISA claims concerning his demand for severance pay. The district court stated that "[i]t is not clear if the Severance Plan constitutes a plan falling under ERISA's ambit, but even [if] it did, Plaintiff's voluntary resignation would preclude recovery." Although Berman's state law claims regarding unpaid salary remained undecided, Berman appealed the grant of partial summary judgment. The Notice of Appeal was filed on April 27, 2011, and the record was transmitted shortly thereafter. On May 10, 2011, however, the district court, having dismissed Berman's ERISA claim, concluded that it lacked any basis for original jurisdiction because Berman is a domiciliary of Switzerland and therefore not a citizen of any state for the purposes of diversity jurisdiction under 28 U.S.C. § 1332. Accordingly, the district court exercised its discretion and remanded to the state court Berman's remaining claims. In doing so, the district court effectively ended the life of the matter in federal court. Thus the district court's grant of a partial summary judgment has become a final judgment for our purposes. *See generally Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 60 (2d Cir. 2006) (noting that a premature notice of appeal may ripen into a valid notice of appeal if the district court subsequently dismisses the plaintiff's action in its entirety and that the failure of the Clerk to enter a separate judgment does not require us to dismiss the appeal.)

## II.     Berman's Termination

The standards for review of an order granting summary judgment are well known. Reviewing the record in the light most favorable to Berman, we note the following.

3

With respect to Berman's claimed entitlement to benefits, we note that the status of the Severance Plan under ERISA appears to be a threshold inquiry which should be decided by the district court. *See Mullins v. Pfizer,* 23 F.3d 663, 666 (2d Cir. 1994) (finding that "[b]ecause the district court erred in basing summary judgment on the lack of constructive discharge, a number of significant issues were not decided or even considered below," and that, "at the outset, the district court will have to determine whether ERISA applies to the [plan]"). If it is an ERISA plan, there may well be a preemption of Berman's state law contract claim. *See Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 114 (2d Cir. 2008) ("ERISA preempts those [state common law claims] that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans.").

Berman's relationship with Tyco does not bear the usual hallmarks of traditional employment. As an attorney in private practice, Berman began working on Tyco-related matters in 1965. In 1997, he, purportedly for foreign regulatory purposes, became, in name only, Vice President of Tyco. The Vice President position involved no substantive responsibilities, and Berman remained employed at his law firm. The arrangement ended in February 2002 when Berman withdrew from private practice and, pursuant to an oral employment agreement with Tyco's then-Chairman and Chief Executive Officer Dennis Kozlowski, became a full-time employee of Tyco in the capacity of Vice President. A few months later, in June 2002, Tyco's Board of Directors, of which Berman was also a member, began to question the propriety of certain transactions authorized by Kozlowski. Kozlowski resigned shortly thereafter and was ultimately indicted and convicted in New York State Supreme Court, New York County, for activities relating to his tenure at Tyco. After Kozlowski's resignation, Tyco hired the law firm of Boies Schiller to conduct an independent review of Tyco's transactions with its officers and directors. Berman learned, at this point, that Tyco had classified him as a "consultant," not an

4

employee, and he in turn sought clarification about his status with Tyco from then-Chairman of the Compensation Committee, Stephen Foss.

On June 25, 2002, the Board of Directors met and voted to classify Berman's status as a "vice-president" and "employee." The minutes of this meeting (which were drafted by Berman) note that he "has since 1 March 2000 been employed by the Company to render legal, regulatory and other professional services" and that Berman's compensation should ". . . be paid to him as an employee and Vice President of the Company . . .." Berman and Tyco agreed that his compensation would continue as had been arranged with Kozlowski and Berman would be eligible for other benefits but would waive his employee rights to certain specified benefits. These terms were memorialized in a July 31, 2002 Letter Agreement ("Letter Agreement").

On August 12, 2002, Berman alleges that an attorney with Boies Schiller, Paul Verkuil, conveyed to Berman that Tyco's newly appointed Chief Executive Officer, Edward Breen, expressed concern about the pending public disclosure of the Letter Agreement in light of an ongoing Manhattan District Attorney ("District Attorney") investigation into Tyco's transactions with its executives. Berman testified that Verkuil asked that the agreement be terminated and that he, Berman responded "I'll do whatever Ed Breen wants me to do." Berman agreed, at that time, to continue to serve on the Board and to terminate the Letter Agreement *until* matters related to the District Attorney's investigation were "clarified." Berman further testified that Tyco proposed to declare in its SEC filing that Berman had, on July 31, 2002, terminated his employment and compensation arrangement but that he had objected to this characterization of his separation from Tyco. Furthermore, notwithstanding that he was no longer employed as Vice President or receiving compensation, Berman continued to perform work for Tyco.

5

In September 2002, Tyco's Board of Directors voted that each of the directors who had served during the Kozlowski era would not be renominated for election at the next annual shareholders' meeting. According to Berman, "[a] number of directors, including Berman, agreed that as new directors were identified and recruited, [the] remaining directors would resign to make way for their replacements." Around this time, Tyco also learned that the District Attorney was no longer concerned about Berman's role at Tyco. Berman then approached Breen and fellow board member, John A. Krol ("Krol"), to discuss what he, Berman, could do for Tyco. He suggested to Krol and Breen that he could continue to work at Tyco to assist with legal and regulatory issues that required some degree of institutional knowledge. Berman noted that Breen and Krol were "noncommittal" regarding any future position for him at the company and "it was clear to [him] that Breen did not wish Berman to have any continuing role as a Vice President or employee of Tyco." Thus, it had become apparent to Berman, that, although he had agreed to leave for the limited purpose of assisting Tyco with the District Attorney investigation and SEC filing, Berman had in fact been forced out of Tyco. On December 5, 2002, Berman resigned from the Board. Berman then initiated this action.

Rejecting Berman's argument that his resignation was conditional and premised on the understanding that he would resign "until matters are clarified" with respect to the District Attorney's investigation, the district court concluded that Berman had voluntarily terminated his employment with Tyco on August 12, 2002, and was therefore ineligible for severance benefits. We disagree. Termination can be actual or constructive. *See generally Chertkova v. Connecticut General Life. Ins. Co.,* 92 F.3d 81 (2d Cir. 1996). Actual discharge or termination "occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Id.* at 88 (quoting *NLRV v. Trumbull Asphalt Co.,* 327 F.2d 841, 843 (8th Cir. 1964)

6

(internal quotation marks omitted). Here, the record evidence, construed in the light most favorable to Berman, would support a reasonable jury finding the following facts. Tyco's outside counsel, Verkuil, suggested that Berman terminate his letter agreement with Tyco *until* the District Attorney's investigation ended. The qualifier "until" suggested to Berman that his resignation, although voluntary on its face, was conditional and would last only "until matters are clarified." Once the District Attorney concluded its investigation involving Berman's employment, Breen's and Krol's rejection of Berman's efforts to have an ongoing role as an employee of Tyco, coupled with Tyco ceasing to compensate Berman, would logically lead Berman to perceive that his employment had in fact been involuntarily and unconditionally terminated. *See id.*

To the extent that Tyco argues that there is no evidence to suggest that Verkuil was relaying a request from Tyco or otherwise acting on Tyco's behalf in asking Berman to resign, the record, read in the light most favorable to Berman, belies such an assertion. Indeed, Berman testified that Verkuil prefaced his request that Berman resign with the statement that Breen was concerned about how Berman's letter agreement would be received in the August 14, 2002 SEC filing. Furthermore, when Berman responded that he would do "whatever Ed Breen wants me to do," Verkuil did not, at that point, clarify that it was he, and not Tyco, who was asking Berman to resign. Nor did Tyco, upon learning of Berman's resignation raise any question about the resignation or otherwise indicate to Berman that it had not sought his resignation. With respect to Tyco's suggestion that the termination arranged by Verkuil was not a conditional temporary one, that argument too is belied by the facts viewed in the light most favorable to Berman. According to Berman's testimony, Tyco continued to direct Tyco-related work matters to Berman — a fact suggestive of Tyco's intention to not fully sever its relationship with Berman. Under the circumstances and in light of the turmoil at Tyco during the relevant period, a jury

7

could conclude that Berman reasonably relied on Verkuil's representation that Berman's termination was conditional and only in effect as necessary until "matters [were] clarified" and Tyco, by continuing to funnel work to Berman, misled Berman as to the accuracy of Verkuil's representation. *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 56 (2d Cir. 2005) (stating that "[a] principal may be bound by the actions of an agent on the basis of apparent authority only where it is shown that the third party – here [Berman] – reasonably relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal.") (quoting *Hallock v. State,* 64 N.Y. 2d 224, 231 (1984) (internal quotations and emphasis omitted and alteration added)).

Because the record is sufficient to support a jury finding that Berman's termination was actual and involuntary, we need not reach whether Berman was, in the alternative, constructively terminated, and we leave for the district court to consider, in the first instance, whether the Severance Plan is an ERISA plan and whether Berman waived, by signing the Letter Agreement, his participation in the Severance Plan. The district court's grant of partial summary judgment is VACATED and REMANDED for proceedings consistent with this ruling. The district court's remand order, dated May 10, 2011, is also VACATED "so that the district court may, in its discretion, exercise supplemental jurisdiction." *Kruse v. Wells Fargo Home Mortg., Inc.,* 383 F.3d 49, 62 (2d Cir. 2004).

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk
